**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Nezar Khaled MAAD, Defendant—
Appellant.**

No. 02–30196.
D.C. No. CR–01–00174–JKS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 2003.

Decided Sept. 10, 2003.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Daniel Cooper, Esq., JoAnn Farrington, AUSA, USAK–Office Of The U.S. Attorney, Anchorage, AK, for Plaintiff–Appellee.

Rich Curtner, Esq., Kevin F. McCoy, Esq., Anchorage, AK, for Defendant–Appellant.

Before PREGERSON, CANBY, and MCKEOWN, Circuit Judges.

## MEMORANDUM *

A confluence of extraordinary and unique events enveloped this case. These include the vandalism of an Anchorage print shop owned by Nezar Maad, an Arab–American, on September 22, 2001, less than two weeks after the tragic attacks on the World Trade Center and the Pentagon. Maad's print shop suffered extensive damage to its equipment and was defaced by the words "We hate Arabs." The Anchorage community came together in an outpouring of support for Maad and his wife. Anchorage residents established a "Not In Our Town" fund to support the Maads. And the FBI launched a hate crime investigation into the vandalism of Maad's store.

On December 11, 2001, federal prosecutors publicly announced that they were dropping the hate crime investigation. On the same day, the government charged Maad by a criminal complaint with committing bank fraud. On December 18, 2001, a grand jury returned an indictment.

The next day, December 19, 2001, the government stated in court during a bail hearing that Maad and his wife were suspects in the vandalism of Maad's print shop.

The community turned against Maad and the "Not In Our Town" fund to support the Maads was immediately frozen.

The trial date was set for February 4, 2002, 54 days after Maad was arrested. On December 19, 2001, a federal public defender was appointed to represent Maad, 40 days before the trial date.

The Maads were subject to a cascade of publicity. From the date their store was vandalized through the period preceding the trial, the four Anchorage television stations broadcast 124 news accounts that related to vandalism of Maad's print shop, the Anchorage community's initial sympathy and support for Maad and his wife, the governments criminal charges of bank fraud against Maad, the government's termination of the hate crime investigation, and the government's statement at Maad's bail hearing that the Maads were suspects of the vandalism at the print shop. And the only daily newspaper in Anchorage, *The Anchorage Daily News*, ran regular front-page stories on the print shop vandalism, the outpouring of community support, the government's charges and accusations against Maad, and the community's negative reaction toward Maad after he

was named a suspect in the vandalism to his store.

As a result of the extensive media coverage in Anchorage, Maad's counsel on January 4, 2002 asked for a change of venue to a federal court within the District of Alaska, but outside of Anchorage or for a change of venue to a federal court outside the District of Alaska. The district court denied Maad's request on January 28, 2002 and Maad's case went to trial on February 4, 2001 as scheduled. Maad was convicted on all counts. He was sentenced to 12 months in prison and five years of supervised release, and was ordered to make restitution to the banks and the Small Business Administration. Bail was denied pending appeal. Maad has served his sentence of imprisonment.

At issue here is a claim of presumptive prejudice rather than actual prejudice. *See Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir.1988) ("Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudice and inflammatory media publicity about the crime."). *See also United States v. Rewald*, 889 F.2d 836, 864 (9th Cir.1989). Given the confluence of the extraordinary events described above, the district court abused its discretion and we reverse the district court's denial of Maad's motion for a change of venue to a federal court outside of Anchorage. Those events, viewed in their entirety, precluded Maad from obtaining a fair trial in Anchorage.

REVERSED.